UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR MANUEL RIOS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MARTIN O'MALLEY,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[1]<br><br>　　　　　Defendant. | Case No.  1:22-cv-01509-SKO<br><br>**ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT**<br><br>(Doc. 1) |

## I.　　INTRODUCTION

Plaintiff Victor Rios ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). (Doc. 1). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

---

[1] On December 20, 2023, Martin O'Malley was named Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html.  He is therefore substituted as the defendant in this action.  *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant.").

[2] The parties have consented to the jurisdiction of the U.S. Magistrate Judge.  (*See* Doc. 11.)

## II.     BACKGROUND

Plaintiff was born on March 29, 1967. (Administrative Record ("AR") 301). He filed a claim for DIB on March 24, 2020, alleging a disability onset date of November 28, 2008. (AR 116). In his application, he alleged "bicipital tendinitis right and left shoulder, tendonitis of both rotator cuffs, cervical disc disorder of cervicothroracic region, cervical spondylosis without myelopathy, disc disorder of umbar region, bilateral scroilitis, disorder of bursae and tendon in shoulder region, arthritis of lumbar spine, spasm of muscle, and right rotator cuff tendintis." (AR 312). Plaintiff has an 11th-grade education and previous work experience as a carpenter. (AR 304, 312-313).

### A.     Relevant Evidence of Record[3]

When Plaintiff filed his application in 2019, he reported lower back pain, shoulder pain, and neck pain, which is largely the basis of his application. (AR 384, 390). Doctors had previously prescribed medication and injections to treat his pain. (*See, e.g.*, AR 382, 388, 403). X-rays from June 2019 demonstrated Plaintiff had acromioclavicular arthropathy with bony thickening and "almost no joint space of AC." (AR 398). Plaintiff underwent an x-ray of his cervical spine in August 2019, which showed disc disease and osteoarthritis (AR 407), and an x-ray from December 2019 showed degenerative joint disease (AR 429). Later imaging showed disc space narrowing at L5-S1 and bilateral sacroiliitis (AR 439).

Upon examination, Plaintiff consistently displayed 4/5 strength of his extremities and a moderately decreased range of motion in his lumbar spine and shoulders. (AR 385, 390-91, 394, 401, 406, 412, 415, 433). He also displayed tenderness in his neck and pain with motion, though there were no signs of atrophy of the cervical and upper back. (*See, e.g.*, 385, 412, 433). Plaintiff has continued to take medication and receive injections to address his pain. (*See, e.g.*, AR 705, 717, 724, 737, 741, 745). As of June and July 2021, Plaintiff continued to have 4/5 motor strength of all extremities, a moderately decreased range of motion of the lumbar spine and shoulders, and tenderness in the neck and pain with motion but without atrophy to the cervical and upper back.

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

(AR 757-58, 762). Plaintiff reports that he cannot stand, sit or lift for extended periods without readjusting his spine, though he also testified he can lift 20 pounds and stand for 30 minutes. (AR 72). He largely completes his own daily activities, except that he cannot bend over to tie his shoes. (AR 83).

Plaintiff also has a history of lung-related issues. Plaintiff underwent a computerized tomography (CT) scan of his chest, abdomen and pelvis in January 2020 after he fell off a ladder. (AR 462, 535). The CT showed Plaintiff had lung nodules, which had been present for years but had increased over time. (AR 462, 477, 496, 503). A subsequent biopsy found the nodules to be benign, and Plaintiff did not report a cough or chest pains. (AR 541). Plaintiff's treating doctor chose to monitor the nodule (Plaintiff was high-risk for lung cancer based on his long-term cigarette smoking and prior work around asbestos (AR 549)) and follow-up testing confirmed the nodules were stable. (AR 559-60). Plaintiff underwent pulmonary testing in June 2020, which showed normal lung functioning. (AR 517). Plaintiff reports some dyspnea. (AR 459, 517).

**B.     The ALJ's Decision**

The Commissioner denied Plaintiff's application for benefits initially on May 18, 2020, and again upon reconsideration on June 25, 2020. (AR 115, 141). Plaintiff requested a telephonic hearing before an Administrative Law Judge (an "ALJ"), and the parties a hearing attended on September 2, 2021. (AR 14). In a decision dated September 15, 2021, the ALJ found that Plaintiff was not disabled as defined by the Act after conducting the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 12-35).

Plaintiff's claim arose under the same title of the Social Security Act as a prior claim[4] where there had been a final decision that Plaintiff was not disabled. (AR 14; *see also* AR 94-114). Therefore, the ALJ was required to (1) apply a presumption of continuing non-disability and, if the presumption was not rebutted by the claimant, determine that the claimant was not disabled; and

---

[4] Plaintiff filed an application for benefits on December 21, 2015, alleging a disability onset date of September 28, 2008. (AR 97). The Commissioner denied his application initially on April 13, 2016, and upon reconsideration on August 12, 2016. (AR 97). Plaintiff requested a hearing before an Administrative Law Judge (an "ALJ"), and the parties attended a hearing on April 30, 2018. (AR 97). In a decision dated August 31, 2018, the ALJ found that Plaintiff was not disabled as defined by the Act after conducting the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 97-109).

(2) if the presumption was rebutted, adopt certain findings required under the applicable sequential evaluation process for determining disability, made in the final decision by the ALJ or the Appeals Council on the prior disability claim. (AR 14; Acquiescence Ruling (AR) 97-4(9); *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988)). The ALJ found Plaintiff's circumstances had changed since the previous decision, thereby rebutting the presumption of continuing non-disability. (AR 15). These changed circumstances included that Plaintiff's lung nodules and sacroiliitis had risen to the level of severe impairment. (AR 14)

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since March 4, 2020 (step one). (AR 17). At step two, the ALJ found that Plaintiff suffers from the following severe impairments: degenerative disc disease of the lumbar spine; degenerative disc disease of the cervical spine; sacroiliitis; osteoarthritis and tendinitis of the bilateral shoulders; and lung nodules. (AR 17). Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 19).

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[5] and applied the assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ found Plaintiff was limited to light work as defined in 20 C.F.R. 416.967(b) with the following limitations:

> The claimant can lift and carry 20 pounds occasionally and 10 pounds frequently; can push and pull occasionally with the arms; can stand and walk for four hours of an eight-hour workday; can sit for six hours of an eight-hour workday; can frequently crouch and occasionally stoop, climb ramps and stairs, kneel, and crawl, and can never climb ladders, ropes, and scaffolds. He can occasionally reach to the

---

[5] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

> front and sides and never reach overhead. He must avoid concentrated exposure to extreme heat, extreme cold, humidity, and pulmonary irritants, and must never be exposed to unprotected heights and dangerous, unprotected machinery.

(AR. 20).

At steps four and five, the ALJ found that the transferability of job skills was immaterial because the Medical-Vocational Rules supported a finding that Plaintiff is not disabled whether or not he has transferrable job skills. (AR 23-24). The ALJ concluded that considering his age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (AR 24). The ALJ based this finding on the testimony of the Vocational Expert ("VE"), who testified Plaintiff could perform the following jobs: furniture rental consultant (Dictionary of Occupational Titles ("DOT") 295.357-018); counter clerk (DOT 249.366-010); and host (DOT 349.667-014). (AR 24). The ALJ concluded Plaintiff was not disabled under the Social Security Act. (AR 24-25).

Plaintiff sought review of this decision before the Appeals Council, which denied review on September 19, 2022. (AR 1). Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

### III.    LEGAL STANDARDS

**A.    Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that he is not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining

whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec.*

*Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.   DISCUSSION

Plaintiff contends the ALJ erred by failing to develop the record related to Plaintiff's physical and mental RFC and by failing to offer reasons sufficient to discount Plaintiff's subjective complaints. For the reasons below, the Court finds the ALJ did not err, and thus, reversal is not warranted.

**A.    The ALJ Did Not Err by Failing to Develop the Record**

   **1.    Legal Standard**

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling

("SSR") 96-8p, 1996 WL 374184, at *1 (1996); *see also* 20 C.F.R. § 416.945(a). It reflects the most that a claimant can do despite their limitations. SSR 96-8p, 1996 WL 374184, at *1. In formulating the RFC, the ALJ must account for all the claimant's medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a); *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (holding that "an RFC that fails to take into account a claimant's limitations is defective"). Therefore, an ALJ errs when they provide an incomplete RFC ignoring "significant and probative evidence." *Hill v. Astrue*, 698 F.3d 1153, 1161-2 (9th Cir. 2012).

An RFC assessment is ultimately an administrative finding reserved to the Commissioner. 20 C.F.R. § 416.946. The RFC does not need to directly correspond to a specific medical opinion; rather, "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015); *see also Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (noting the ALJ's responsibility to weigh conflicting medical evidence and translate accepted medical opinions into "concrete restrictions"). "ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work." *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022) (citing *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998)). The ALJ's RFC assessment should be affirmed if the ALJ has applied the proper legal standard and their decision is supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

Claimants carry the burden of proving they are disabled. 20 C.F.R. § 404.1512(a). However, "Social Security proceedings are inquisitorial rather than adversarial." *Schiaffino v. Saul*, 799 Fed. App'x 473, 476 (9th Cir. 2020) (quoting *Sims v. Apfel*, 530 U.S. 103, 111–12 (2000)). An ALJ has a responsibility to develop a "complete medical history" and to "make every reasonable effort to help [the plaintiff] get medical reports." 20 C.F.R. § 404.1512(d). "The ALJ always has a 'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)).

> The ALJ is not a mere umpire at such a proceeding . . . . it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts. He must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited.

*Id.* (quoting *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992)). However, the duty to develop the record further is only triggered when there is ambiguous evidence or the record does not allow for proper evaluation of the evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). The ALJ's duty to develop the record fully is heightened when a claimant is mentally ill and unable to protect his or her own interests. *Id.* If the record includes "specific and sufficient" evidence to evaluate a claim, the record is neither ambiguous nor inadequate. *Gurin v. Saul*, 842 F. App'x 45, 48 (9th Cir. 2021). An ALJ may discharge their duty by subpoenaing claimant's doctors, submitting questions to claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record. *Tonapetyan*, 242 F.3d at 1150.

**2.   Analysis**

**A.   The ALJ Did Not Err in Formulating Plaintiff's Physical RFC**

Plaintiff first contends the ALJ failed to develop the record because the record did not contain an RFC assessment from an examining physician (Doc. 14 at 8-9); however, the RFC is a legal conclusion reserved to the Commissioner. 20 C.F.R. § 416.946; *see also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine the residual functional capacity."). The RFC does not need to reflect a specific medical opinion. *Rounds*, 807 F.3d at 1006. In formulating Plaintiff's RFC, the ALJ considered reports on Plaintiff's RFC from state agency physicians G. Spinka, M.D. (May 14, 2020) (AR 124) and L. Tanaka, M.D. (June 22, 2020). (AR 22, 128-140). Plaintiff's suggestion that the ALJ had a duty to develop the record further because they only partially credited the state agency examiners is unpersuasive. "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Plaintiff does not point to an opinion that is ambiguous or inadequate, and simply granting less weight to an opinion does not trigger a duty of the ALJ to request additional evaluations.

9

1    Plaintiff next contends the ALJ erred by relying on records that did not include Plaintiff's

2 breathing problems or "otherwise did not actually address Plaintiff's condition." (Doc. 14 at 10).

3 Regarding Plaintiff's breathing problems, Plaintiff's contention that the ALJ erred by relying on

4 records that did not include Plaintiff's breathing problems is belied by the record.

5    The ALJ relied on hospital records from January 2020 to June 2021, as well as Plaintiff's

6 subjective complaints to formulate Plaintiff's RFC. (AR 22, citing AR 462-591). For example,

7 the ALJ considered records that showed a biopsy of the lung nodules showed that they are benign,

8 and Plaintiff did not report a cough or chest pains. (AR 22, citing 541). The ALJ noted

9 Plaintiff's treating doctor chose to monitor the nodule, and follow-up testing confirmed it was

10 stable. (AR 559-60). The ALJ also considered records showing that Plaintiff underwent

11 pulmonary testing in June 2020, which showed normal lung functioning. (AR 517). When

12 formulating Plaintiff's RFC, the ALJ also credited Plaintiff's subjective complaints of dyspnea

13 and his history as a smoker, and included pulmonary restrictions in the RFC. (Doc. 20, 23). The

14 ALJ did not err by failing to consider records related to Plaintiff's lung issues, nor did he have a

15 duty to develop the record further regarding these complaints. Plaintiff also did not identify any

16 limitations the ALJ should have included in the RFC related to Plaintiff's breathing problems.

17 *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 n.2 (9th Cir. 2009) (rejecting

18 challenge to RFC determination where the claimant did "not detail what other physical limitations

19 follow from the evidence of his knee and shoulder injuries, besides the limitations already listed

20 in the RFC").

21    Plaintiff repeatedly asserts "[t]he ALJ failed his duty to develop the record and obtain an

22 updated medical opinion regarding Plaintiff's physical conditions. This is error. Further, this error

23 is harmful as Plaintiff was treated for additional conditions not considered by the state agency

24 medical consultants and testified to limitations that were not addressed within the record." (Doc.

25 14 at 10-11). It is unclear which conditions Plaintiff believes the ALJ failed to address, nor has

26 Plaintiff identified an ambiguity requiring the ALJ to develop the record further. To the extent

27 Plaintiff contends the ALJ should have ordered an additional report on Plaintiff's RFC because

28 there were medical records post-dating the state agency examiners reports, the mere existence of

medical records post-dating a state agency physician's review does not in and of itself trigger a duty to further develop the record. *See, e.g., Charney v. Colvin*, No. CV 1-7080 JC, 2014 WL 1152961, at *7 (C.D. Cal. Mar. 21, 2014), aff'd, 647 F. App'x 762 (9th Cir. 2016) (finding that the ALJ did not err in relying on the opinions of state agency physicians that did not account for subsequent medical records where subsequent records were considered by the ALJ and were not inconsistent with RFC); *Smith*, 2020 WL 6305830, at *8 (concluding "updated opinion is not required simply because additional medical evidence is received after the State agency physicians had already reviewed Plaintiff's records."). Moreover, "there is always some time lapse between a consultant's report and the ALJ hearing and decision, and the Social Security regulations impose no limit on such a gap in time." *Owen v. Saul*, 808 F. App'x 421, 423 (9th Cir. 2020).

Plaintiff also contends the ALJ erred by failing to develop the record related to whether Plaintiff required a cane or walker. (Doc. 14 at 11). Plaintiff contends:

> Further, it is important to note that Plaintiff has a prescription for a cane and a walker. When taken in conjunction with Plaintiff's testimony, it becomes clear that Plaintiff requires a hand-held assistive device to stand and walk. Although the ALJ stated that there was no evidence in the record to state that the devices were medically necessary, it is also important to note that the records were silent as to the topic of assistive devices entirely. It was not noted that Plaintiff did not need an assistive device any more than it was noted that the devices were not necessary. Particularly as the ALJ relied on the lack of medical necessity of the assistive devices to determine that Plaintiff's spinal condition did not meet or medically equal the listed impairments, this further indicates the need for an updated medical opinion.

(Doc. 14 at 11). Plaintiff has again failed to identify an issue that is ambiguous or inadequately developed. The ALJ noted that while Plaintiff has a prescription for a cane and a walker, the evidence did not establish such assistance was medically necessary. (AR 20). For a hand-held assistance device to qualify as medically required, "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing and describing the specific circumstances in which it is needed—i.e., all the time, periodically, or only limited situations, and distance and terrain." Social Security Ruling (SSR) 96-9p, 1996 WL 374185, at *7. As the ALJ noted, Plaintiff consistently reported walking two miles per day without mentioning an assistance device, and none of his pain management records indicated he used such

11

a device. (AR 20, citing AR 594, 718, 721, 725, 728, 731, 734, 738, 742, 746, 757, 761). The ALJ's decision may be supported by substantial evidence even if the evidence may support a different conclusion. *Edlund*, 253 F.3d at 1156 ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.") Plaintiff's argument is simply a request for the Court to reweigh the medical evidence, which it cannot do. *Tommasetti*, 533 F.3d at 1038 (the court will uphold the ALJ's conclusion where the evidence is susceptible to more than one rational interpretation).

For these reasons, Plaintiff has not demonstrated the ALJ erred by failing to develop the record regarding Plaintiff's physical RFC.

### b.     The ALJ Did Not Err in Formulating Plaintiff's Mental RFC

Plaintiff also contends the ALJ erred by failing to develop the record related to Plaintiff's mental RFC. Plaintiff contends the ALJ impermissibly accepted the previous state agency psychological consultants' finding that Plaintiff's major depressive disorder was non-severe. (Doc. 14 at 11-12). The ALJ could not rely on this opinion, Plaintiff contends, because Plaintiff had rebutted the presumption of continuing non-disability, and therefore, relying on a medical opinion from a previous decision was improper. (Doc. 14 at 12). Plaintiff also contends the ALJ erred because the examiners did not consider Plaintiff's general anxiety disorder, and there is no medical opinion analyzing the severity of his general anxiety disorder. (Doc. 14 at 11-12).

Plaintiff has failed to identify an insufficiency or ambiguity triggering the ALJ's duty to develop the record further. As the Commissioner notes, Plaintiff did not allege disability because of any mental impairments. (AR 72-75, 79-82, 318-20). At Step Two, the ALJ found Plaintiff's depression and anxiety were non-severe impairments. (AR 18). To reach this conclusion, the ALJ relied on the mental assessments by State Agency psychological consultants H. Amado, M.D., and Michael D'Adamo, Ph.D., which he found persuasive. (AR 19). While it is not clear whether Dr. Amado and Dr. D'Adamo considered Plaintiff's general anxiety disorder (their reports note that they considered Plaintiff's depression, bipolar and "related disorders" [AR 120-21, 133-34]), "[t]he regulations require that an ALJ evaluate the degree to which a non-examining source considers the evidence, not that a failure to consider all evidence requires the source to be discounted." *Elsey v.*

12

*Saul*, 782 Fed. Appx. 636, 637 (9th Cir. 2019) (citing 20 C.F.R. § 404.1527(c)(3)). The ALJ also considered that Plaintiff received limited, conservative treatment, and his mental status exams generally demonstrated unremarkable findings. (AR 19). For instance, Plaintiff attended only two appointments with mental health specialists (AR 18-19; *see also* AR 598, 611). While the ALJ found Plaintiff had rebutted the presumption of continuing non-disability, the ALJ based this finding on changes to the musculoskeletal listings and because Plaintiff's lung nodules and sacroiliitis had risen to the level of severe impairment—not because of any changes to Plaintiff's mental health. (AR 14). The ALJ was not required to obtain additional evidence because the record was sufficient to evaluate Plaintiff's claim. Therefore, the ALJ did not err by failing to develop the record related to Plaintiff's mental RFC.

**B.      The ALJ Offered Sufficient Reasons to Discount Plaintiff's Subjective Complaints**

   **1.      Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id*. The claimant is not required to show their impairment "could reasonably be expected to cause the severity of the symptom [they] ha[ve] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection.[6] *Id*. As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported

---

[6] The Court rejects the Commissioner's contention that a lesser standard of review applies. (*See* Doc. 14 at 13).

13

by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester*, 81 F.3d at 834).

**2.  Analysis**

Because the ALJ found Plaintiff's "medically determinable impairments reasonably could be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591. Plaintiff contends the ALJ failed to state clear and convincing reasons to discount Plaintiff's subjective complaints because the ALJ merely summarized Plaintiff's treatment records. (Doc. 14 at 14). Plaintiff also contends the ALJ does not indicate which of his allegations are not supported by objective findings. (Doc. 14 at 14). Plaintiff's arguments are unavailing.

The ALJ noted Plaintiff's complaints were inconsistent with the medical records, and "[w]hile a *lack* of objective medical evidence may not be the sole basis for rejection of symptom testimony, inconsistency with the medical evidence or medical opinions can be sufficient." *Woods v. Comm'r of Soc. Sec. (Woods I)*, No. 1:20-cv-01110-SAB, 2022 WL 1524772, at *10 n.4 (E.D. Cal. May 13, 2022) (emphasis in original). For instance, Plaintiff reported continuing back pain, but Plaintiff's treating physicians never recommended more invasive treatment over the

two-year period from June 2019 to June 2021.  (Compare AR 385 *with* AR 757-58).  This is a sufficient reason to discount Plaintiff's testimony.  *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.") (citation omitted).  The ALJ also considered inconsistencies in Plaintiff's testimony, such as Plaintiff's testimony that he was climbing ladders, working as a painter's assistant, and trimming hedges despite reporting disabling pain.  (AR 22, citing 462, 767-70).  The ALJ also noted that while Plaintiff reported a prescription for a cane and walker (AR 753-55), none of his pain management or primary care records mentioned Plaintiff needing a cane or other assistive device.  (AR 22).  While the "clear and convincing reasons" standard is among the highest in social security standards, "[o]ur cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020).  The ALJ's reasoning is easily discernible, and he cited specific evidence that supported his conclusion to reject Plaintiff's subjective complaints.  The ALJ did not err by discounting Plaintiff's testimony.

## V. CONCLUSION AND ORDER

For the foregoing reasons, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Martin O'Malley, Commissioner of Social Security, and against Plaintiff Victor Rios.

IT IS SO ORDERED.

Dated:     **February 12, 2024**              /s/ *Sheila K. Oberto*
                                              UNITED STATES MAGISTRATE JUDGE